U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED LAFAYETTE

OCT -7 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

RSL Funding, LLC                    Civil Action No. 6:14-2187

versus                             Judge Richard T. Haik, Sr.

Everett, et al                      Magistrate Judge C. Michael Hill

## MEMORANDUM ORDER

Before the Court is an appeal from a final judgment of the United States Bankruptcy Court for the Western District of Louisiana filed by RSL Funding LLC ("RSL"), [Rec. Doc. 8],[1] Prudential Insurance Company of America's ("PICA"), brief in opposition, [Rec. Doc. 12], and RSL's Reply [Rec, Doc. 14]. For the reasons that follow, the judgment of the Bankruptcy Court will be affirmed.

### I. Background

In 2008, Gregory Scott Everett settled a wrongful-death claim. *Reasons for Decision, 4-6, p. 2.* The settlement agreement awarded Everett periodic payments that "cannot be accelerated, deferred, increased or decreased by [Everett] or any Payee" ("Settlement Agreement"). *3-43, at 20.* The Settlement Agreement also provided that neither "[Everett][n]or any Payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise." *Id.*

The settling defendants arranged for an annuity to fund their settlement with Everett. *4-6, p. 2.* Pruco Assignment Corporation ("PRUCO") assumed the settling defendants' obligation to make the periodic payments to Everett pursuant to a "non-qualified assignment" agreement ("PRUCO Assignment") which Everett signed. *R. 3-4 at 30; PRUCO Assignment at 6.* The PRUCO Assignment provided as follows:

---

[1] The record indicates that RSL filed identical briefs on July 21, 2014, *R. 8*, and July 22, 2014, *R. 9*. The Court will refer only to the first brief filed by RSL.

> None of the Periodic Payments and no rights to or interest in any of the Periodic Payments ... can be accelerated, deferred, increased or decreased by any recipient of the Periodic Payments. **No Claimant shall have the power to effect any transfer of Payment Rights, and any purported transfer shall be wholly void** *ab initio*.

*3-43 at 26-27; PRUCO Assignment at 2-3 (emphasis added.)*

In order to fund the periodic payments, PRUCO purchased an annuity from Prudential Insurance Company of America ("PICA") ("Annuity Contract"). *R. 3-43.* The Annuity Contract provided in pertinent part:

> [t]he Certificate Holder [PRUCO] shall have sole and exclusive ownership rights in this Certificate. **No other person shall have any right to anticipate, sell or absolutely assign (by any means regardless of form) payments under this Certificate and any attempted assignment will be void at the outset.**
> 
> . . . .
>
> [a]ll payments under the Certificate are subject to [PRUCO'S] right to direct payments . . . describe[d] in the Ownership and Control provision of this Certificate.

*3-43 at 34, 36; Annuity Contract at 2, 4 (emphasis added).* Thus, under the terms of the Annuity Contract, PICA, as the annuity issuer, agreed to make the periodic payments according to PRUCO's instructions – subject to PRUCO owning the annuity and having the sole right to direct payments. *R. 3-43 at 36.* Everett was the designated annuitant entitled to receive monthly payments of $3,675.39, commencing on January 5, 2018, through and including December 5, 2017, <u>but was not given the power to assign, transfer, or sell the receipt of the payments</u>.

In January 2009, Everett signed an assignment agreement with RSL ("Assignment Agreement.") *R. 3-43, pp. 48-53, Assignment Agreement.* RSL is a Texas limited liability company that acquires rights under structured settlements and other long-term receivables in exchange for lump sum cash payments. *R. 4-6, Reasons for Decision.* The Assignment

2

Agreement included as exhibits the Settlement Agreement, PRUCO Assignment and Annuity Contract. *Id. at p. 48.* Neither PICA nor PRUCO was a party to the Assignment Agreement. The Assignment Agreement provided that RSL would pay $216,000 to Everett for his interest in nearly $400,000 in future payments due under the annuity. *Id.* RSL provided Everett with an immediate cash loan of $1000. *R. 4-6.* The Assignment Agreement was contingent on RSL receiving proof that the assigned payments could be properly purchased by it. *R. 4-6, p. 5; Assignment Agreement at ¶ 5.* It also included an arbitration clause. *Id. at ¶ 13(a).*

In February 2009, Everett's counsel notified RSL that Everett was cancelling the Assignment Agreement. *R. 4-6, p. 5.* Upon Everett informing PICA of the Assignment and his cancellation of same, PICA notified RSL that it would not honor the assignment because the annuity payments were not transferable. *Id.* In May 2009, RSL commenced an arbitration proceeding against Everett contending that Everett breached the Assignment Agreement. The arbitrator entered an award purporting to garnish the periodic payments to Everett and ordered PICA to make RSL the designated beneficiary under the annuity. *R. 3-43, p. 61.* PICA had not received notice of the proceeding.

RSL filed a petition in Texas state court to confirm the arbitration award. *R. 3-43, p. 66, Orig. Pet, RSL Funding, LLC v Everett*, No. 2009-41386 (11th Dist. Ct., Harris County, Tex., July 1, 2009)). The Texas court granted RSL's "Unopposed Motion to Confirm Agreed Arbitration Award" in which RSL represented that RSL and Everett agreed the award should be confirmed, and entered judgment. *Id. at 82, Aug. 18, 2009 Judgment.* While the award ordered PICA to take various actions, RSL did not name nor serve PICA as a defendant in the Texas court.

Thereafter, RSL filed a garnishment action and served PICA with a writ of

3

garnishment. *See Prudential Ins. Co. Of Am v. RSL Funding, LLC*, 2011 WL 286130 at *1 (Tex.App.-Houston [1st Dist.] Jan. 27, 2011). On January 27, 2011, the Court of Appeals in Houston ruled for PICA, holding that the district court's judgment confirming the arbitration award was constitutionally defective because RSL never gave notice to PICA. *Id. at *2*. The Court also ruled that RSL had no valid claim in the RSL Assignment Agreement against Everett. *Id.*

Thereafter, RSL returned to the arbitration court and obtained a "Corrected Arbitration Award" dated April 4, 2011, which removed any reference to PICA and PRUCO and purported to make the Annuity payments due and payable to RSL. *R. 3-43 at 94, Corrected Arbitration Award at pp. 3-5*. On July 11, 2011, the district court vacated the Corrected Award and awarded PICA its attorneys' fees. *R. 3-43, July 29, 2011 Order; R. 4-6, p. 6*.

On August 12, 2011, Everett filed for relief under Chapter 11 of the Bankruptcy Code in the Western District of Louisiana Bankruptcy Court. *R. 4-6, Reasons for Decision, 6*. The case was converted to Chapter 7 on November 14, 2011. *Id.* RSL filed two proofs of claim in the bankruptcy case totaling approximately $889,878. *Id. at 6-7*. RSL also commenced an adversary proceeding, seeking a declaration that the Assignment Agreement was valid and that it is owed the settlement payments assigned pre-bankruptcy petition. RSL also asserted a breach of contract claim asserting that Everett breached representations and warranties in the Assignment Agreement and RSL is therefore entitled to the pre-petition annuity payments. *R. 3-1, Complaint, R. 3-25 at 4, Amended Complaint*. On December 19, 2012, the Bankruptcy Court granted PICA's motion to intervene. *R. 3-25 at 7*. PICA and Everett contended that the assignment was invalid because of the anti-assignment language in the Settlement Agreement, the PRUCO Assignment Agreement, and Annuity Contract. The

4

parties subsequently filed motions for summary judgment based on the foregoing which the Bankruptcy Court took under advisement pending trial on the merits. After trial on the merits, the Bankruptcy Court denied all motions for summary judgment and entered judgment against RSL, denying RSL's claim for declaratory relief and damages as well as its claim for breach of contract and damages[2] based on the invalidity of the Assignment Agreement. *Id. at 2, R. 4-7, Judgment.* Thereafter, RSL filed this appeal.

## II. Standard

This Court has jurisdiction to hear an appeal of a bankruptcy court order. 28 U.S.C. § 158. In reviewing a decision of the bankruptcy court, Rule 8013 of the Federal Rules of Bankruptcy Procedure requires the court to accept the bankruptcy court's findings of fact unless clearly erroneous and to examine de novo the conclusions of law. *See In re Halo Wireless, Inc.*, 684 F.3d 581, 586 (5th Cir. 2012). Mixed questions of law and fact are also reviewed de novo. *In re San Patricio Cnty. Cmty. Action Agency*, 575 F.3d 553, 557 (5th Cir.2009).

## III. Discussion

RSL asserts that the Bankruptcy Court failed to apply Texas law as provided under the Assignment Agreement and erroneously denied RSL's breach of contract claim by requiring the element of justifiable reliance. In response, PICA argues that the Court should affirm the Bankruptcy Court's denial of RSL's breach of contract claim primarily because RSL did not appeal the determination that the purported assignment in the Assignment Agreement was invalid. Alternatively, PICA argues that the anti-assignment provisions in the Settlement Agreement, the PRUCO Assignment and the Annuity Contract invalidate the attempted transfer to RSL and render the Assignment Agreement null and void. Thus, RSL

---

[2] The court awarded RSL $1000, the amount RSL provided to Everett as an immediate loan.

5

cannot satisfy the first element of any breach of contract claim—the existence of a valid and enforceable contract—thereby precluding any alleged damages from RSL's failure to receive periodic payments. While the Court agrees that RSL did not address the Court's ruling that the Assignment Agreement between Everett and RSL was an invalid contract which failed to assign Everett's payments under the Annuity Contract to RSL, the Court will review the Bankruptcy Court's ruling as the Court finds the validity of the ruling governs the issues raised in this appeal.

Because the Assignment Agreement contained a contractual choice-of-law clause provides that "disputes over the terms of the assignment shall be resolved in ... Texas or Louisiana," the parties were in dispute as to whether Texas or Louisiana law applied. Initially, the Bankruptcy Court properly performed a choice-of-law analysis and determined that Louisiana's choice-of-law rules apply. *Klaxon Co. V. Stentor Elec. Mfg. Co.* 313 U.S. 487 (1941); *Woods-Tucker Leasing Corp. Of Ga. v. Hutcheson-Ingram Dev. Co.*, 642 F.2d 744, 748 (5th Cir. 1981). Finding that choice of law clauses are enforceable under Louisiana law, La. Civ. Code Art. 3540, the Bankruptcy Court held that the parties' dispute as to whether Texas or Louisiana law applies is relevant only if the applicable law is in conflict. *Schneider Nat'l Transp. v. Ford Motor Co*, 280 F.3d 532, 536 (5th Cir.2002). Thus, the Bankruptcy Court turned to the ultimate determination of whether or not the Assignment Agreement between RSL and Everett was valid.

Addressing the parties conflicting arguments as to Everett's rights under the Settlement Agreement as well as the affect of the anti-assignment clauses in the Settlement Agreement, PRUCO Assignment and the Annuity Contract, the Bankruptcy Court held that Everett had no ownership interest in the Annuity Contract and thus no rights under the Annuity Contract regardless of any anti-indemnity agreement in the Settlement Agreement.

6

In examining the Bankruptcy Court's analysis, the Court finds the case relied on by the Bankruptcy Court, *Jack v All State Life Ins. Co.*, 390 B.R. 307 (Bankr. S.D. Tex 2008), instructive in this matter.

In *Jack*, the late husband of the debtor in bankruptcy had entered into a personal injury settlement agreement which provided that the payments would be funded by an annuity contract held by a third party. The annuity contract stated that the owner of the annuity had the sole right to direct payments and that this right could not be assigned. Similar to this case, the debtor's late husband had assigned his payments to a settlement factoring company. The debtor asserted that the assignment was void based on the anti-assignment clause in the settlement agreement. Considering the interest(s) actually assigned under the settlement factoring company's agreement, the court held that while the debtor's late husband waived his rights under the settlement agreement to which he was a party, he was not a party to the annuity contract and therefore had no rights under the contract which he could have assigned. *Id. at 326.* While the *Jack* court's holding was based on Texas law, Louisiana law does not conflict with that law. *See*, e.g., *Conerly v Regions Bank*, 668 F.Supp.2d 816 (E.D. La. 2009) ("the assignee steps into the shoes of the assigner and acquires only those rights possessed by the assignor at the time of the assignment").

Relying on the *Jack* decision for guidance, the Bankruptcy Court addressed the interest that was assigned pursuant to the Assignment Agreement. The Bankruptcy Court determined that the Assignment Agreement did not distinguish between payment rights under the Settlement Agreement and the Annuity Contract. The Assignment Agreement states that Everett "is entitled to annuity payments (collectively referred to as the 'Periodic Payments') as result of an order dated on or about September 15, 2007 (the 'Settlement Agreement')...." R. 3-43, p. 48. It further states that PICA, as the annuity issuer, has "the continuing obligation

to make the Periodic Payments to the Assignor under the Settlement Agreement and pursuant to ...the Annuity Contract...." *Id.* Ultimately, the Assignment Agreement states that Everett "sells, assigns, and transfers to RSL" all of his "right, title and interest" in and to the "Assigned Payments"—defined as the monthly payments under the Annuity Contract. *Id.* This conclusion is further supported by the requirement that PICA re-direct the annuity payments to RSL. *Id.* Thus, the assignment between Everett and RSL was an attempt to assign rights under the Annuity Contract that were held by PRUCO rather than Everett. Based on this analysis, the Bankruptcy Court found, just as the *Jack* court, that the Assignment Agreement was invalid.

RSL contends that the Bankruptcy Court improperly analyzed its breach of contract claim as a breach of warranties and representations claim, which includes the element of reliance. Based on the Bankruptcy Court's ruling that the Assignment Agreement was invalid, however, there was no valid contract to find any breach. *See, e.g., Bannum, Inc. v. Mees*, 2014 WL 2918436, at *1 (Tex. App., June 24, 2014) ("Before one can sue another for breach of contract, there must first be a contract susceptible to breach. An agreement rendered 'null and void' is not such a contract because a void contract never came into existence."). Thus, the Bankruptcy properly turned to RSL's claim that it was owed damages[3] based on Everett's representations that the "Assigned Payments" were assignable.

The Bankruptcy Court properly determined that under Texas law, in order to establish a damages claim based on breach of the representations and warranties in the Assignment Agreement, RSL must demonstrate that any such damages were caused by the representations or its reliance on the representations in the agreement. *See Southwestern Am. Tobacco Co.*

---

[3] RSL requested damages in the amount of the annuity payments minus the amount RSL was to pay for those payments. *R. 4-6, p. 20.*

8

*v. Grinnell*, 951 S.W.2d 420, 436 (Tex.1997) (stating that "reliance is also not only relevant to, but an element of proof of plaintiffs' claims of breach of express warranty"); *McManus v. Fleetwood Enterprises Inc.*, 320 F.3d 545, 550 (5th Cir. 2003) (recognizing that recovery by a warranty claim requires some showing of reliance). Also, as correctly stated by the Bankruptcy Court, "[w]hile Louisiana courts have not directly addressed this reliance requirement, Louisiana courts require some showing that the breach of representations and warranties caused the damages claimed by the non-breaching party." *R. 4-6, p.21* (citing *Capital One, N.A. v. Nicoll*, 113 So.3d 1158 (La.App. 5 Cir. March 27, 2013)); *see also, Volvo Trucks North America, Inc. v. Crescent Ford Truck Sales, Inc.*, 2004 WL 595083, 2 (E.D.La.,2004) (Under Louisiana law, the plaintiff must prove that the breach caused its damages.); *Busby v. Parish Nat'l Bank*, 464 So.2d 374, 377 (La.App. 1st Cir.,2002) (Plaintiff must show damages as a result of his justifiable reliance on the defendant's misrepresentations.).

During the trial Everett testified that he disclosed to RSL the assignment restrictions in the settlement documents and that he was not the owner of the Annuity Contact. *Tr. Transcript at 180*. In fact, copies of the Settlement Agreement and the Annuity Contract, which included the anti-assignment clauses, were attached to the Assignment Agreement. Finally, RSL acknowledged the potential of assignability issues by including provisions in the Assignment Agreement that conditioned RSL's obligation to perform on a subsequent determination that the payments could be assigned. While the Bankruptcy Court held that RSL could not recover any benefit under the Assignment Agreement because that agreement was invalid from the outset, the Bankruptcy Court further ruled that RSL could not recover damages based on a breach of representations made by Everett because the assignability issues were disclosed to or known by RSL before it entered into the agreement. Hence, RSL

9

failed to establish that it suffered damages as a result of its reliance on any untrue representations.

Having conducted a de novo review of the rulings of the bankruptcy court as well as the briefing of the parties, and the applicable law,

**IT IS ORDERED** that the Reasons for Decision and Judgment of the Bankruptcy Court should be and is hereby **AFFIRMED** and this action is **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED** this 6th day of October, 2014 at Lafayette, Louisiana.

Richard T. Haik, Sr.
United States District Judge